## Gardner, Jr. v. Commercial Security Company.

(Decided March 18, 1919.)

Appeal from McCracken Circuit Court.

1. Bills and Notes—Negotiable Instruments—Defenses.—The maker of negotiable notes, regular on their face, has no defense to the suit of an innocent third person who has purchased the notes for value before maturity, even though they were obtained from the maker by the payee by unfair or fraudulent means if the holder did not know and had no reasonable means of knowing at the time he took the note of such fraud or unfair means.

2. Bills and Notes—Defenses.—As between two innocent persons, if one must suffer, it must be that one whose negligent or willful act made the imposition possible.

3. Bills and Notes—Equity—Defenses.—If the equities are equal as between the maker from whom negotiable notes are obtained without value, and an innocent third person who receives the notes for value before due, equity will aid neither party, but the one having the legal right will prevail.

ARTHUR Y. MARTIN for appellant.

EATON & BOYD for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

In 1916 F. N. Gardner, Jr., was engaged in the mercantile business in Paducah, under the firm name of F. N. Gardner, Jr., Company, and as such entered into a written contract with the Partin Manufacturing Company, of Memphis, Tennessee, whereby Gardner, in consideration of $1,250.00, was to receive from the Partin Company several prizes, advertising matter, and certain rights with respect to "putting on" a merchants' trade contest, which the Partin Manufacturing Company was promoting. To the written contract was attached two negotiable notes for $625.00 each, dated April 20, 1916, and signed by F. N. Gardner, Jr., Company, by F. N. Gardner, the first of which became due seven months thereafter, and the other eight months from date, which two notes represented the consideration above mentioned.

Shortly after the contracts and notes were executed and delivered by Gardner to the Partin Company and before either of the notes matured, the Partin Company sold, assigned and delivered said notes for a valuable consideration to appellee, Commercial Security Company, of Chicago, who claims to have received the paper in due course of business and without notice of any infirmity therein. The notes were not paid at maturity, whereupon the security company instituted suit against Gardner, as maker, in the McCracken circuit court, to recover the amount due with interest. Gardner offered several defenses, the basis of all of which was fraud alleged to have been perpetrated by the Partin Company in obtaining the notes, which fraud, it was alleged, was either actually or constructively known to the appellee security company at the time and before it acquired the notes sued on. The case was fully prepared, submitted and judgment entered for the appellee surety company. Gardner appeals.

We are persuaded that the Partin Company did not act in good faith with Gardner at the time the contract and notes were made and delivered. In order to secure the contract the Partin Company presented to Gardner letters of recommendation obtained by it from other merchants with which it claimed to have done business, which letters did not state the facts, but untruthfully praised and boosted the Partin Company. These letters, as Gardner afterwards learned, had been obtained from the writers by the payment of a money consideration and

for the purpose of misleading, deceiving and defrauding appellant. The whole scheme was one which an honest man would not countenance, and if the notes sued on were in the hands of the Partin Manufacturing Company it appears that Gardner would be entitled to the relief he prays in his answer.

It is admitted by appellant Gardner that the contest, which was included in the contract, was partly carried out, but he complains that he did not receive the automobile prize which he purchased from the Partin Company, to be given away to the contestant who procured the most business for the F. N. Gardner, Jr., Company store, and as a consequence, having advertised he would give away an automobile, he was compelled to purchase and pay for another automobile to satisfy the contestant who won the prize. Manifestly it is a hardship upon Gardner, after contracting with the Partin Company for an automobile and executing his note in payment therefor, to be compelled to go into the market and buy another machine, and it is regrettable that the Partin Manufacturing Company can not be made to respond in this action.

So far as this record discloses, appellee, Commercial Security Company, is wholly unconnected with the Partin Manufacturing Company and was entirely unaware of the fraud, if any, which was employed by the Partin Company to obtain the notes from Gardner. The evidence shows that the paper passed to the appellee in due course for value before due and was received by the security company in good faith without knowledge or intimation of any fraud or vice in the bills or either of them. They were regular on their face, and imported verity. The security company, before purchasing the notes, made due inquiry concerning the solvency of the maker, and being satisfied in these particulars purchased the notes at a fair price. While there are numerous suspicious circumstances attending the transaction between the Partin Manufacturing Company and the security company, all the evidence, aside from mere suspicion, tends to establish the regularity of the transfer of the paper from the Partin Company to the security company and the good faith of the parties. Conceding that the Partin Manufacturing Company acted in bad faith with Gardner, and that Gardner, in a suit with the

Partin Manufacturing Company, could obtain the relief, quite a different rule prevails with reference to the good faith holder of commercial paper obtained for value before maturity. If the transfer was made in good faith— the paper was received by the transferee for value before maturity in due course, without knowledge of any infirmity therein, the holder takes it free from all defenses available to prior parties among themselves, and may enforce it for the full amount against all parties liable thereon. Subsec. 57, sec. 3720b, Kentucky Statutes.

The Partin Manufacturing Company has obtained an advantage, through questionable methods, to which it was not and is not entitled. Either Gardner or the Commercial Security Company must suffer. In such case the one who first makes the imposition possible, or sets in motion the thing which leads to the hardship, must suffer the loss. Gardner signed and delivered the notes to the Partin Manufacturing Company—commercial paper —thus putting it in the power of the Partin Manufacturing Company to obtain the money from an innocent party, and from the record the Partin Company did obtain the money from the Commercial Security Company at a time when the security company knew nothing of the alleged fraud perpetrated by the Partin Company upon Gardner. Ostensibly at least, the security company received the paper regular on its face before due for value and without knowledge of any infirmity therein. As such innocent purchaser it is entitled to protection, and the trial court did not err in entering judgment in favor of the security company for the full amount of the notes with interest.

As between Gardner, the maker, and the security company, an innocent purchaser, the latter has the superior equity, but granting that the equities are equal the well-established rule that where equities are equal, the law will prevail, militates in favor of the security company, who has the legal title to the notes and lawful right to enforce the same. 10 R. C. L. 385, 11 Bibb 40; Bank of Commerce v. Haldeman, 109 Ky. 222; Diamond Distilleries Co. v. Gott, 137 Ky. 585; J. R. Wathen Medical Co. v. Brand, 143 Ky. 468; McConnon & Co. v. Evans, 152 Ky. 491.

Judgment affirmed.